IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SHAKITA R. STEWART, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:12-cv-423 (MTT) (CHW) |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Shakita R. Stewart's application for benefits. 42 U.S.C. § 405(g). Because substantial evidence supports the ALJ's finding that Plaintiff was not disabled, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

**ADMINISTRATIVE HISTORY**

At the time of her July 5, 2011 administrative hearing, Plaintiff was 26 years old. (Doc. 11-2, p. 39). Her then-attorney,[1] Brian Randall, claimed that Plaintiff suffered "two primary problems . . . neck pain . . . and schizoaffective disorder." (*Id.*). In her initial disability application, however, Plaintiff listed "essential hypertension" as a "primary diagnosis." (Doc. 11-3, p. 3). Additionally, in a state agency disability report, Plaintiff claimed that "[h]eart problems" caused her to quit her quit her job as a cook at Burger King in 2008. (Doc. 11-2, p. 42). Plaintiff also has a history of alcohol and cannabis dependence. (Doc. 11-2, pp. 53-54).

Plaintiff applied for Title II and Title XVI benefits in December 2008, but her claims were denied initially and on reconsideration, and she subsequently requested a hearing before an

---

[1] Plaintiff now proceeds *pro se*.

administrative law judge (ALJ). The reviewing ALJ issued an unfavorable decision on July 13, 2011, finding Plaintiff "not disabled." Plaintiff appealed this unfavorable decision to the Appeals Council, who denied her request for review on September 17, 2012. (Doc. 11-2, pp. 2-4). She now asks the Court for relief.

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). See also Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record (AR) to determine the reasonableness of the Commissioner's factual findings. Bloodsworth, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. Id.

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. Harrell v. Harris, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no…presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. Id.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of such impairments has been found, the Commissioner determines whether the impairment(s) meets or medically equals the severity of one or more of the specified impairments listed in Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must proceed to evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the

Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his or her past work, the Commissioner must determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

## ANALYSIS

The Commissioner's decision must be affirmed because the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Plaintiff appears to argue that the ALJ overlooked or ignored important medical evidence in making her findings. As discussed below, however, the record shows that the ALJ adequately evaluated all of the relevant evidence, and that her findings are supported by substantial evidence.

### THE ALJ'S FINDINGS

Following the five-step sequential evaluation procedure,[2] the reviewing ALJ issued an unfavorable decision on July 13, 2011. (Doc 11-2). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least August 15, 2008, her alleged onset date. (Doc 11-2, p. 14). At step two, the ALJ found that Plaintiff "ha[d] the following severe impairments: cervical stenosis status-post surgical repair Aug. 2009; hypertension; schizoaffective disorder; and cannabis dependence." (Doc. 11-2, p. 15). The ALJ also found that Plaintiff suffered from at least one non-severe impairment: "a history of episodes of sinus tachycardia that ha[s] resolved and [does] not require[] further treatment." (*Id.*). At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in

---

[2] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Appendix 1.[3] Therefore, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC") and found that Plaintiff could perform:

> Medium work . . . with certain limitations. The claimant should never climb ladders, ropes, or scaffolding. She can frequently climb ramps and stairs, balance, stoop, crouch, kneel and crawl. She can frequently flex and extend her neck. The claimant should avoid concentrated exposure to extreme heat and workplace hazards of moving machinery and unprotected heights. She should not interact with the general public, but is able to have occasional interaction with co-workers. The claimant's work should be in [a] low-stress job, defined as having only occasional changes in the work setting. (Doc. 11-2, p. 16).

Based on this RFC finding, the ALJ found, at step four, that Plaintiff could perform her past relevant work as a cook. (Doc. 11-2, p. 27). In addition, though, the ALJ also made alternative step-five findings, and determined that Plaintiff could make an adjustment to "other work."[4] (Doc. 11-3, p. 19). As a result of both her step-four and step-five findings, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act, and therefore not entitled to benefits. (Doc. 11-3, p. 19).

### THE ALJ'S ANALYSIS OF THE RELEVANT EVIDENCE

Plaintiff asks the Court to "review all [the] medical and mental evidence," but she highlights particular records that, according to Plaintiff, warrant modification of the Commissioner's final decision. Because the ALJ adequately considered these records, and because the ALJ's finding of "not disabled" is supported by substantial evidence, reversal is not recommended.

(a)  The Medical Records of Dr. Weigang Tong

Plaintiff first argues that the ALJ improperly relied on the testimony of a vocational expert who found that Plaintiff could resume her former job as a cook. She claims that Dr. Weigang Tong, one of her treating physicians, expressly instructed Plaintiff not to work as a

---

[3] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.
[4] *See* 20 C.F.R. § 416.960(c).

cook. (Doc. 20, p. 3). In Plaintiff's words: "Dr. Tong Weigang [sic] stated in his plan of care comments on 7/09/2009 that I [was] to discontinue [my] restaurant work due to worsening symptoms." (Doc. 20, p.3). The relevant record reads:

> **Plan of Care Comments:** Numbness, tingling exacerbated by lifting. Discontinued restaurant work due to worsening symptoms. Diagnostic plan discussed. (Doc. 11-8, p. 15).

The Commissioner properly notes, as the ALJ did, that this language does not represent either a medical opinion or a proposed course-of-treatment, but rather merely records Plaintiff's own subjective complaints. (Doc. 11-2, p. 21). The record's date confirms this fact: Plaintiff quit her job in September 2008, (Doc. 11-2, p. 42), but Dr. Tong's report is dated July, 2009. Accordingly, the ALJ properly interpreted and evaluated the relevant record, and did not err in relying on the vocational expert's testimony that Plaintiff could resume work as a cook.

(b)   The Medical Records of Dr. Horace Ball and Dr. James Piat

Plaintiff next argues that the medical records of Dr. Horace Ball, M.D., and Dr. James Piat, Ph. D., both state-agency medical evaluators, support a finding of "disabled." (Doc. 20, p. 3). The record indicates otherwise.

Dr. Ball completed a "Physical Residual Functional Capacity Assessment" form in March, 2010, and found that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; and could sit, stand or walk, with normal breaks, about 6 hours in an 8-hour workday. (Doc. 11-8, p. 41). Dr. Ball found that Plaintiff's subjective allegations of pain were "partially credible," but he noted that "[Plaintiff's] condition is expected to resolve w/in a year of onset such that she should be capable of this RFC as outlined." (Doc. 11-8, p. 45). Dr. Ball also noted that "there are no current reports of syncope," that Plaintiff "ha[d] been non-compliant with her BP meds," and that "[Plaintiff's] current exams are W[ithin ]N[ormal ]L[imits]." (*Id.*). The ALJ

purported to give Dr. Ball's findings "great weight," and the ALJ's RFC findings, which allow for "medium work . . . with [certain] limitations," appear entirely consistent with Dr. Ball's own physical RFC assessment. (Doc. 11-2, p 26).

Dr. Piat completed both a "Mental Residual Functional Capacity Assessment" form and a "Psychiatric Review Technique" form. In the "Mental Residual Functional Capacity Assessment" form, Dr. Piat found that Plaintiff was only "moderately limited" in her ability to (1) concentrate for extended periods; (2) complete a normal workday and workweek without interruptions; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) set realistic goals and make plans independently of others. (Doc. 11-8, pp. 22-23). In the form's 15 other categories, Dr. Piat found that Plaintiff was "not significantly limited." (*Id.*). In addition, under the "Functional Capacity Assessment" portion of the form, Dr. Piat stated:

- A. Claimant is able to adequately follow and recall directions but has some difficulty as they become more detailed. <u>Not substantial limitation</u>.
- B. Claimant has trouble sustaining concentrations persistence and pace at complex or stressful tasks but <u>these are not substantial limitations</u>.
- C. Not a good candidate for work with the general public, but can perform adequately at tasks not subject to a great deal of social stress or interaction. <u>These are not substantial limitations</u>.
- D. Claimant needs help making realistic plans but <u>these are not substantial limitations</u>. (Doc. 11-8, p. 25) (emphasis added).

In the "Psychiatric Review Technique" form, Dr. Piat found that Plaintiff suffered from "[s]chizoaffective Dis depressed type" and "Polysubstance abuse – partial remission." (Doc. 11-8, pp. 28, 34). Nevertheless, Dr. Piat also found that Plaintiff failed to satisfy both the paragraph B and the paragraph C criteria of Appendix 1, Part 404, because Plaintiff suffered only mild to moderate functional limitations, and because Plaintiff had not yet suffered any episodes of decompensation. (Doc 11-8, pp. 36-37). The ALJ purported to give Dr. Piat's findings "great

weight," and she expressly adopted Dr. Piat's psychiatric review findings at step three of her analysis. (Doc. 11-2, pp. 15, 26). The ALJ's RFC findings, which state that Plaintiff should perform a "low-stress job" and "should not interact with the general public," appear entirely consistent with Dr. Piat's findings.

Because the ALJ properly evaluated the medical records of Drs. Horace Ball and James Piat, and because the ALJ's RFC finding is supported by substantial evidence, the Commissioner's decision below should be affirmed.

### (c) Vocational Analyses of Shae Canty and Pershenia Murray

Plaintiff third argues that the vocational consultant case analyses of Shae Canty and Pershenia Murray show that Plaintiff "[cannot] perform past work as described by [Plaintiff] or as described by [the Dictionary of Occupational Titles]." (Doc 20, p. 4).

Both Ms. Canty and Ms. Murray found that Plaintiff was not disabled. (Doc. 11-6, pp. 56, 78). Ms. Canty found that Plaintiff could perform medium, unskilled work with "dec[r]eased social demands," and she suggested that Plaintiff could work as a "collator operator," "basket filler," or "table worker." (Doc. 11-6, p. 56). Ms. Murray found that Plaintiff could perform light, semi-skilled work with no public contact, and she suggested that Plaintiff could work as a "collator operator," "photocopying-machine operator," or "cleaner, housekeeping." (Doc. 11-6, p. 77). Therefore, even assuming that the ALJ erred at step four by finding that Plaintiff could perform her past work, the vocational analyses of Ms. Canty and Ms. Murray still support a finding of "not disabled" at step five.[5]

---

[5] The ALJ found, at step four, that Plaintiff could perform her past relevant work as a cook, a "[l]ight[,] entry-level, semi-skilled" job. (Doc. 11-2, p. 27). However, the ALJ also found, at step five, that Plaintiff could work as: (1) a "linen room attendant," a medium, unskilled job; (2) a "laundry worker, commercial laundry," a medium, unskilled job; (3) an "industrial cleaner," a medium, unskilled job; (4) a "check processor," a light, unskilled job; (5) a "hotel cleaner," a light, unskilled job; and (6) a "folder, commercial laundry," a light, unskilled job. (Doc. 11-2, p. 27).

      (d)      Medical Records of Dr. William S. Brooks

Plaintiff fourth argues that the ALJ ignored a diagnosis of "rheumatoid arthritis, carpal tunnel syndrome" by Dr. William S. Brooks. (Doc. 20, p. 4). Plaintiff cites a portion of the administrative hearing transcript in which both the ALJ and Plaintiff's then-attorney appeared unaware of such a diagnosis:

> Plaintiff: I've been diagnosed from Dr. Brooks with rheumatoid arthritis, carpal tunnel syndrome.
> ALJ: Could you point me to a reference where – I haven't seen anything with carpal tunnel or RA.
> ATTY: I did not. There's nothing that I've seen for carpal tunnel. (Doc. 11-2, p. 58).
> ALJ: Okay. I didn't see that either.

The relevant medical record does indeed indicate, under "DX. or Impression," findings of "joint pain" and "Rhumatoid Arthritis." (Doc. 11-7, p.7).[6] However, the record dates from August 2003, over five years before Plaintiff applied for social security benefits, and no intervening medical records indicate additional complaints of wrist pain. *See* SSR 96-7p (discussing the importance of a "longitudinal medical record"). Moreover, the ALJ cited the relevant exhibit in her decision, and noted that Plaintiff "underwent neurodiagnostic testing of the left arm in October 2003, which was normal." (Doc. 11-2, p. 18). These facts do not indicate that the ALJ ignored Plaintiff's evidence, and they also fail to show that the ALJ's final decision is not supported by substantial evidence.

      (e)      Medical Records of Dr. Joe S. Robinson

Plaintiff last argues that "Dr. Joe S. Robinson state[d] that I do have substantial neck pain and he believes that I have a component of disability." (Doc. 20, pp. 4-5).

---

[6] Plaintiff also cites another of Dr. Brooks' records that, although barely legible, appears to state — under the Ears Nose Throat (ENT) portion of the Review of Symptoms (R.O.S.) — "sore throat." (Doc. 20, p. 4; Doc. 11-7, p. 14).

Insofar as Plaintiff asks the Court to re-weigh the evidence, her request is precluded by law. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (stating that courts "may not decide the facts anew [or] reweigh the evidence"). Insofar as Plaintiff disputes the reasonableness of the ALJ's findings, however, her claim lacks merit.

The ALJ properly discounted Dr. Robinson's "component-of-disability" remark in her unfavorable decision: "I give less weight to [Dr. Robinson's] opinion that [Plaintiff] 'may have a component of disability,' since this is a matter reserved to the Commissioner." (Doc. 11-2, p. 26). *See* 20 C.F.R. § 404.1527(d) ("Medical source opinions on issues reserved to the Commissioner").

The ALJ also properly gave "less weight" to a finding, by Dr. Robinson, that Plaintiff was "limited to sitting for 2 hours and standing/walking less than 2 hours." Both the infrequency of the treatment relationship between Plaintiff and Dr. Robinson,[7] as well as the equivocation that Dr. Robinson repeatedly expressed – that he was "unsure whether [Plaintiff was] malingering" (Doc 11-2, p. 26; Doc. 11-10, p. 93; Doc. 12-13, pp. 37, 39) – provided sufficient "good cause" to discount some of Dr. Robinson's findings. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 ("good cause" to discount the opinion of a treating source exists when (1) the treating source's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating source's opinion is conclusory or inconsistent with his or her own medical records). See *also* § 303.1527(c) ("How we weigh medical opinions").

## CONCLUSION

After careful consideration of the entire record, it appears that the ALJ properly evaluated Plaintiff's evidence and that the Commissioner's decision of "not disabled" is supported by

---

[7] The ALJ also noted that Dr. Robinson did not see Plaintiff from June 2010 to February 2011, when he issued physical limitations discussed above.

substantial evidence. Accordingly, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom the above-styled case is assigned WITHIN FOURTEEN(14) DAYS after being served with a copy thereof.

      **SO RECOMMENDED**, this 18th day of October, 2013.

                                              s/ Charles H. Weigle  
                                              Charles H. Weigle  
                                              United States Magistrate Judge